UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHERRIE BURAS MANTON and                    CIVIL ACTION
INDEPENDENT FIREARM OWNERS
ASSOCIATION, INC.


VERSUS                                      NO: 11-785


RODNEY "JACK" STRAIN, JR., ET               SECTION: R
AL.


## ORDER AND REASONS

Before the Court is defendants' motion for summary judgment on plaintiffs' claims that defendants violated their constitutional rights.[1] Also before the Court is plaintiffs' motion to produce religious items and a firearm allegedly taken in violation of the First and Second Amendments.[2] For the following reasons, the Court GRANTS defendants' motion and DENIES plaintiffs' motion.


## I.   BACKGROUND

Plaintiff Sherrie Buras Manton, along with the Independent Firearm Owners Association, filed suit on April 10, 2011.[3] Manton contends that employees of the St. Tammany Parish Sheriff's Office violated her right to keep and bear arms, her

---

[1]    R. Doc. 41.

[2]    R. Doc. 36.

[3]    R. Doc. 1.

right to due process and equal protection, and her right to be
free from unreasonable searches and seizures, in violation of the
United States and Louisiana Constitutions. Plaintiffs sued
Sheriff Rodney "Jack" Strain, Deputy Chief Al Strain, Chief
Deputy Fred Oswald, Sergeant Brian O'Cull, Deputy Jerry Rogers,
Deputy Jerry Coyne,  Deputy Allen McGuire, Deputy Randy
Thibodeaux, Deputy Allen Schulkens, Deputy Assistant Chief Tim
Lintz, and Deputy "Does", all employees of the St. Tammany Parish
Sheriff's Office, as well as Charles Hughes, Jr., lead counsel
for Sheriff Strain and the Sheriff's Office.[4]  Plaintiffs allege
that defendants executed a search of Manton's home on January 24,
2008 and seized a shotgun belonging to her son and a number of
religious items, including a bible, missal, rosary, prayer box,
journals, and medals, which have not been returned.[5] Defendants
deny that any religious items were taken. They admit that the
shotgun was confiscated but claim that it was legally seized and
held.

The facts underlying the search of Manton's house are
complex and have been described at length by this Court in
another case brought by Manton and her husband against the St.
Tammany Parish Sheriff's Office and its deputies. *See Manton v.
Strain*, No. 09-0339, 2010 WL 4364552 (E.D. La. Oct. 21, 2010). In

---

[4]     R. Doc. 1 at 6-9.

[5]     *Id.* at 11.

short, members of the Jefferson Parish Sheriff's Office suspected Norman Manton, plaintiff's husband, of fraud and informed Mr. Manton's parole officer, Jessica Hutchinson-Blue. *Manton*, 2010 WL 4364552, at *2. The Jefferson Parish Sheriff's Office also contacted Sergeant Brian O'Cull, which led him to request an arrest warrant for Mr. Manton and a search warrant for his house. *Id.* The warrants were issued on January 23, 2008 by Judge Peter Garcia of the 22nd Judicial District Court of Louisiana in St. Tammany Parish. *Id.*

On January 24, 2008, St. Tammany Parish Sheriff deputies executed the search warrant for the Manton home. *Id.* at *3. After the search revealed a shotgun at the residence, Sergeant O'Cull notified Hutchinson-Blue that a firearm had been found. *Id.* Hutchinson-Blue told Sergeant O'Cull that the presence of the shotgun violated Mr. Manton's probation conditions. *Id.* On January 25, 2008, Mr. Manton was taken into custody, where he remained for four months, until the State of Louisiana *nolle prossed* the charge, and Manton was released. *Id.*

The Mantons filed suit in this Court on January 26, 2009, alleging violations of 42 U.S.C. §§ 1983 and 1986 and state law by many of the same individuals who are defendants here. *Id.* at *1. The Mantons' federal claims included unreasonable search and seizure, wrongful arrest, cruel and unusual punishment, and conspiracy to violate constitutional rights. *Id.* The Court

granted defendants' motion for summary judgment, holding that plaintiffs provided insufficient evidence to support their federal claims. *Manton*, 2010 WL 4364552, at *6-11.

Here, defendants seek summary judgment on all of plaintiffs' claims, primarily on the ground that they are barred under the doctrine of *res judicata*.[6] Plaintiffs seek the enforcement of an existing injunction against Sheriff Strain. In the suit *National Rifle Association of America, Inc. v. Nagin*, a court in the Eastern District of Louisiana issued a consent decree, permanently enjoining Sheriff Strain and his employees from confiscating lawfully possessed firearms. No. 05-4234, 2006 U.S. Dist. LEXIS 275 (E.D. La. 2006) (addressing seizure of firearms from citizens during Hurricane Katrina). Plaintiffs ask the Court to enforce the standing order against Sheriff Strain and to return to Manton the firearm removed from her house, as well as other religious items allegedly confiscated by members of the Sheriff's Office.[7]

## III. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[6]     R. Doc. 41.

[7]     R. Doc. 36.

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

    If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  *Id.* at 1265.

    If the dispositive issue is one on which the nonmoving party

will bear the burden of proof at trial, the moving party may
satisfy its burden by merely pointing out that the evidence in
the record is insufficient with respect to an essential element
of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325.
The burden then shifts to the nonmoving party, who must, by
submitting or referring to evidence, set out specific facts
showing that a genuine issue exists.  *See id.* at 324.   The
nonmovant may not rest upon the pleadings, but must identify
specific facts that establish a genuine issue for trial.  *See,
e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel.
Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir.
1988), *cert. denied*, 488 U.S. 926 (1988).


**III. DISCUSSION**

   *A.    Claims by Sherrie Buras Manton*

   Defendants contend that plaintiffs' claims are barred by the
doctrine of *res judicata*, since Manton could have brought them in
her earlier suit. Under this doctrine, "a final judgment on the
merits of an action precludes the parties or their privies from
relitigating issues that were or could have been raised in that
action." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th
Cir. 2009) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).
The party asserting the affirmative defense of *res judicata* must
demonstrate that: (1) the parties in the actions are identical;

(2) the earlier judgment was rendered by a court of competent
jurisdiction; (3) there was a final judgment on the merits; and
(4) the same claim or cause of action is involved. *See Oreck
Direct, LLC*, 560 F.3d at 401.  Defendants assert that these
conditions have been met, while plaintiffs do not address in any
way the issue of *res judicata* in their response to defendants'
motion for summary judgment.[8]

    This Court previously rendered a final judgment on the
merits of claims brought by the Mantons, satisfying the second
and third requirement. Regarding the parties involved, Mrs.
Manton was a plaintiff in the first suit and brought the claims
at issue here. Although several named defendants were also
involved in the Mantons' earlier suit, there are seven new
defendants, specifically Deputies Rogers, Coyne, McGuire,
Thibodeaux, Schulkens, and Lintz, as well as Charles Hughes, lead
counsel for Sheriff Strain and the Sheriff's Office. Defendants
contend that because these individuals are in privity with the
defendants from the first suit, the condition that the parties be
identical is satisfied.

    Whether privity exists is a factual inquiry. *Dilworth v.
Vance*, 95 F.3d 50, 1996 WL 457425, at *1 (5th Cir. 1996).  The
Fifth Circuit Court of Appeals has held that privity of interest
exists in the following, narrowly-defined circumstances: "(1)

---

    [8]    R. Doc. 43.

where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990). Defendants argue that the interests of the new defendants were adequately represented by the defendants involved in the earlier suit.

Although the Supreme Court has construed this category of privity narrowly, *see Taylor v. Sturgell*, 553 U.S. 880 (2008), the Court finds that privity between the defendants exists here. The added defendants are St. Tammany Parish Sheriff deputies and legal counsel. Plaintiffs do not identify specific acts committed by any of these defendants. Rather, the deputies are broadly accused of unlawfully conspiring to seize items from the Mantons, and Hughes is accused of formulating legal policies producing constitutional violations. In short, plaintiffs seek to blame the Sheriff's Office for the actions at issue and by extension all personnel involved in the search and seizure. Sheriff Strain, Deputy Chief Strain, and Sergeant O'Cull, named defendants in both suits, defended the actions and policies of the St. Tammany Parish Sheriff's Office in the first suit and thus adequately represented other members of the Sheriff's Office. *Cf. Dilworth*, 1996 WL 457425, at *1 (prison guards accused of excessive force

8

were not in privity with sheriff sued in previous suit because
sheriff defended the suit on grounds that did not involve the
liability of the guards).  The Court therefore finds that the new
defendants are in privity with defendants who represented the St.
Tammany Parish Sheriff's Office in the first suit brought by the
Mantons.

     Defendants also contend that both suits by Mrs. Manton
address the same claim or cause of action, as is required for the
doctrine of *res judicata* to apply. To make this determination,
the Fifth Circuit applies the transactional test of the
Restatement (Second) of Judgments § 24, which focuses on "whether
the two cases under consideration are based on the same nucleus
of operative facts." *U.S. v. Davenport*, 484 F.3d 321, 326 (5th
Cir. 2007). "The nucleus of operative facts, rather than the type
of relief requested, substantive theories advanced, or types of
rights asserted, defines the claim." *Id.*

    The Court finds that the two suits brought by Mrs. Manton
share a nucleus of operative facts. The initial claims were much
broader, but both suits address the actions of the St. Tammany
Parish Sheriff's Office on January 24, 2008. In the earlier suit,
the Mantons alleged that the search and seizure violated their
constitutional rights under the Fourth Amendment, an identical
cause of action as was brought here, although the Mantons
previously focused on the facts surrounding the search rather

than on the items seized. *See Manton*, 2010 WL 4364552, at *5. In

fact, the exhibits that plaintiffs attached to their complaint in

this case, documents related to the search and seizure, were

previously submitted to the Court by defendants in their motion

for summary judgment in the first suit.[9] The presence of a

firearm in the Manton home played a significant role in the

earlier suit, as it represented the alleged reason for which Mr.

Manton was taken into custody. *See Manton*, 2010 WL 4364552, at

*3. The Mantons therefore could have brought a claim under the

Second Amendment and other constitutional provisions for the

confiscation of the shotgun. Further, the Mantons did not file

their first lawsuit until January 9, 2009. Thus, they could have

included in their complaint the failure of the St. Tammany Parish

Sheriff's Office to return the firearm, since nearly a year had

passed since its seizure.

   Regarding the religious artifacts allegedly confiscated,

the Mantons' complaint in the first suit stated that items not

listed in the search warrant had been sized, "including religious

artifacts, prayer books and personal diaries".[10] In that

complaint, plaintiffs alleged that the items had not been

returned despite repeated requests.[11] Although the causes of

---

[9]     *Compare* R. Doc. 1-2 *and* Case No. 09-339: R. Doc. 112-5.

[10]    Case No. 09-339: R. Doc. 1 at 14.

[11]    *Id.*

action in the first suit did not specifically address these religious items, it is clear that the Mantons *could* have included the confiscation within their suit.

In responding to defendants' motion for summary judgment, plaintiffs do not engage with the issue of *res judicata*, and they offer no arguments to refute defendants' contention that Mrs. Manton's earlier suit rested on the same facts at issue here. The Court therefore finds that this suit and the Mantons' earlier suit arise out of the same nucleus of operative facts. Mrs. Manton seeks to relitigate issues "that could have been raised in her earlier action." *Oreck Direct, LLC,* 560 F.3d at 401. Accordingly, her claims for damages and injunctive relief related to the search and seizure that occurred on January 24, 2008 are barred under the doctrine of *res judicata.*

*B. Claims by Independent Firearm Owners Association*

Defendants do not address the status of the second plaintiff, the Independent Firearm Owners Association, which was not involved in the earlier suit brought by the Mantons. The Association joined Manton in seeking enforcement of the permanent injunction issued in the case *National Rifle Association of America, Inc. v. Nagin*, No. 05-4234, 2006 U.S. Dist. LEXIS 275 (E.D. La. 2006). Plaintiffs allege that the confiscation of the Mantons' firearm by St. Tammany Parish Sheriff deputies violates the injunction. Although the injury identified in plaintiffs'

complaint is the seizure of the Mantons' firearm, it cannot be
assumed that if Manton may not bring claims related to the
incident, the Association's cause of action for injunctive relief
must be dismissed automatically.[12] Indeed, a voluntary
association has standing to bring suit on behalf of its members
when (a) its members would have standing to sue in their own
right; (b) the interests it protects are germane to the
organization's purpose; and (c) neither the claim asserted nor
the relief requested requires the participation of individual
members in the lawsuit. *Familias Unidas v. Briscoe*, 619 F.2d 391,
398 (5th Cir. 1980).

Yet, even assuming for the purposes of the motion that these
conditions are met, the Court finds that the Association has
failed to demonstrate that questions of material fact exist as to
whether the Sheriff's Office violated the injunction. The
injunction specifically addressed lawfully possessed firearms.
*National Rifle Ass. of America, Inc.,* 2006 U.S. Dist. LEXIS 275,
at *2. Defendants contend that they were permitted to remove the
shotgun from the Mantons' home, because its presence violated the
terms of Mr. Manton's probation. The Fifth Circuit has stated

---

[12]    It is self-evident that the Independent Firearm Owners
Association concerns itself with firearms. Nothing in the record
indicates that the Association would have standing to bring
claims related to the confiscation of religious artifacts. Thus,
any standing that the Association has is limited to the claim
that members of the St. Tammany Parish Sheriff's Office
confiscated a firearm in violation of the 2006 injunction.

that while the Second Amendment protects individual rights, "that

does not mean that those rights may never be made subject to any

limited, narrowly tailored specific exceptions or restrictions

for particular cases that are reasonable and not inconsistent

with the right of Americans generally." *United States v. Emerson*,

270 F.3d 203, 261 (5th Cir. 2001) (prosecution of defendant for

possessing firearm while subject to order entered in Texas

divorce action did not violate Second Amendment). As evidence

that deputies did not confiscate a lawfully possessed weapon,

defendants submit the affidavit of Mr. Manton's probation

officer, Jessica Hutchinson-Blue. She states that the terms of

Mr. Manton's probation did not allow him to have a firearm in the

house and that she informed Sergeant O'Cull, who coordinated the

search and seizure operation, of her intention to seek a hearing

on the revocation of Mr. Manton's probation.[13]

In their response to defendants' motion for summary

judgment, plaintiffs dismiss as a "ruse" defendants' assertion

that Mr. Manton could not possess a firearm under the terms of

his probation.[14] Plaintiffs argue that Mr. Manton was a hunter

and firearms instructor and that the firearm belonged to his son.

But, plaintiffs put forth no evidence whatsoever in support of

---

[13]    R. Doc. 41-7; *see also* Case No. 09-339: R. Doc. 112-6
at 18 (motion and order for hearing to revoke probation filed by
Hutchinson-Blue).

[14]    R. Doc. 43.

their contention that the shotgun's presence did not violate Mr.

Manton's probation and that the firearm therefore was lawfully

possessed. *See F.D.I.C. v. Fred E. Rizk Const. Co.*, 981 F.2d 1256

(5th Cir. 1992) ("[A] bald assertion, totally unsupported by

specific factual representations . . . cannot create an issue of

fact."). Therefore, plaintiffs have not demonstrated that

questions of material fact exist as to whether defendants

confiscated a lawfully possessed firearm. The Court thus finds

that summary judgment on the claim that defendants violated the

injunction issued in *National Rifle Association v. Nagin* is

warranted.

    *C. State Law Claims*

    The Court has determined that defendants are entitled to

summary judgment on plaintiffs' claims arising under federal law.

Plaintiffs also contend that defendants' actions violated the

Louisiana Constitution. Accordingly, the Court must consider

whether to continue to exercise supplemental jurisdiction over

plaintiffs' remaining claims.  *See* 28 U.S.C. § 1367. One of the

reasons for which a district court may decline to exercise

supplemental jurisdiction is if it has dismissed all claims over

which it has original jurisdiction. 28 U.S.C. § 1367(c). In

addition to the statutory factors, the court must also balance

the factors of judicial economy, convenience, fairness, and

comity.  *Smith v. Amedisys*, Inc., 298 F.3d 434, 446 (5th Cir.

2002).   The Court has "wide discretion in determining whether to
retain supplemental jurisdiction over a state claim once all
federal claims are dismissed."   *Noble v. White*, 996 F.2d 797, 799
(5th Cir. 1993).   Still, the "general rule" is to decline to
exercise jurisdiction over pendent state-law claims when all
federal claims have been eliminated prior to trial.   *Amedisys*,
298 F.3d at 446-47.

   Here, the Court has dismissed all the claims over which it
had original jurisdiction.   Only state-law claims remain, and the
Court has no independent basis for jurisdiction over them.   As
they exclusively involve issues of Louisiana state law,
principles of comity weigh in favor of allowing a state forum to
adjudicate them.   The Court therefore finds that the rule
counseling against the exercise of supplemental jurisdiction over
state-law claims when no federal claims remain applies in this
case, and it dismisses those state-law claims without prejudice.


**IV.   CONCLUSION**

   For the foregoing reasons, defendants' motion for summary
judgment is GRANTED. Plaintiffs' motion to produce religious
items and the firearm is DENIED. Plaintiffs' state-law claims are
DISMISSED WITHOUT PREJUDICE.

   New Orleans, Louisiana, this 20th day of December, 2012.

_____
                SARAH S. VANCE
          UNITED STATES DISTRICT JUDGE

15