UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHERRIE BURAS MANTON and<br>INDEPENDENT FIREARM OWNERS<br>ASSOCIATION, INC. | CIVIL ACTION |
| VERSUS | NO: 11-785 |
| RODNEY "JACK" STRAIN, JR., ET AL. | SECTION: R |

OPPOSITION TO REPORT AND RECOMMENDATION

May It Please the Court:

A Citizen does not lose her First or Second Amendment Rights when law enforcement continues to be in the unlawful possession of her Bible, Rosary, Missal used to worship at Mass, or firearm. Sheriff Jack Strain's seizure of these specific items is an attack on Catholics and on the constitutionally protected right to worship as a Catholic. The report notes that counsel for the Sheriff has denied seizing such items. Defendants' statement is a lie.

If fact, consistent with Sheriff and counsel's habit and practice of fabricating facts and evidence, counsel Charles M. Hughes had told a number of persons including the courts that (1) they DID take the rosary and missal used in the worship of the Holy Mass, and (2) that they DID NOT take those religious items, (3) that they DO NOT HAVE the rosary and metals blessed by the Pope and the missal or (4) that they DO HAVE the rosary and metals blessed by the Pope and the missal as and and her late son's shotgun and are still in possession of all of those items. [1]

---

[1] The report also skirts the issue of counsel's prior fabrication of hours billed by noting that defendants Longino and Core were not named in this matter; the Longino-Core dismissal was cited to remind the Court that three of the sheriffs attorneys read a 52 word motion and order for two and one half hours when it only took counsel fifteen minutes to write and file the Longino-Core dismissal and order. It was cited as an

-1-

The report again ignores that fact that no attempts to use court procedures can be considered frivolous, groundless, vexatious, and improper when the St. Tammany Parish Sheriff or any law enforcement agency still has possession of such constitutionally protected personal items, as those they have taken from Sherrie Buras and refuse to return.

I.  The Issues That the Report Places Before the Court

To consider the report and its recommendations, the Court should consider:

1. To request attorney fees under 42 U.S.C. 1988, and 28 U.S.C. 1927 the party requesting such must prove that the conduct of the opposing party or their counsel was frivolous, groundless, vexatious, and improper under 42 U.S.C. § 1988 and caused needless litigation under 28 U.S.C. § 1927.

2. To request attorney fees, the party requesting such fees must provide the Court and the opposing party with an exact description of the specific "legal work" performed and <u>demonstrate to the Court has such work is taxable under the provisions and the jurisprudence established by the United States Fifth Circuit Court of Appeal</u>.

3. While counsel for the Sheriff has submitted 52 pages of hours they claim to have worked, they have not selected the work which the Fifth Circuit authorizes under the taxing provisions for attorney fees. In fact, their memorandum in support simply says here are our hours. The report fails to analyze those hours as well.

4. The report also ignores the significance of the Longino-Core matter and fails to acknowledge that hours previously submitted by Sheriff's counsel contained

---

example of the billing practices of Hughes and his firm and their fabrication of legal services performed, constitutes fraud upon the taxpayers of St. Tammany.

fabricated billing—such as 2.30 hours billed by three attorneys who simply read a <u>52 word motion and order</u> which undersigned counsel wrote in 10 minutes and filed in 5 minutes.

II. Buras's Claim Cannot Be Frivolous, Groundless, Vexatious, or Improper as Sheriff Jack Strain Still Has Her Bible, Rosary, Missal and late Son's Shotgun

Ms. Buras filed this complaint for the specific purpose of asking the Court to protect her First Amendment Rights and order Sheriff "Jack" Stain to return her Bibles, the Missal her family uses to celebrate the Mass, their late son's Rosary and other religious items identified below. The Report suggests procedural obstacles which It notes prevent It from ordering Strain to return her Bible, Rosary and Missal and makes the issue res judicata.

Continuing violations of a citizen's constitutional rights are never concluded especially those most significant rights such as the freedom to worship and the right to keep and bear arms. Until such constitutional rights are enforced, nothing regarding their enforcement can be res judicata. Any action by any persons sworn to uphold the United States Constitution that obstruct a citizen's first and second amendment rights is treason.

Ms. Buras also moved the Court to enforce the permanent 2nd Amendment injunction ordered by this United States District Court against Sheriff Jack Strain and order him to return her son, the Late David Manton's Remington 870 Youth Model 20 Gauge Shotgun with his initials "DJM" carved in the stock; Given to David by his Mother when he was ten years old. The Court found procedural obstacles here as well.

The original dismissal and now the report ignores the fact that the Sheriff is still in unlawful possession of items used in worship or of firearms, the Citizen's rights to have those items returned cannot be obstructed by procedural or substantive items.

The dismissal and now the report ignores that the First Amendment and Second Amendment rights of Buras are absolute and resolution though the Courts are the peaceful alternative to what citizens including

the religious community of St. Tammany might envision as necessary to enforce or protect a citizen's right to Worship and to Bear Arms. Sheriff Jack Strain is still in possession of the items illegally seized by his deputies.

Considering the constitutional issues involved, Buras has advised counsel of her intent to continue to pursue through appeal all actions necessary until her religious items and her late son's firearm are surrendered to her by the Sheriff. Counsel agree with her demand that her First and Second Amendment rights be protected and enforced at all costs and shall assist in all necessary appeals.

Statement of Facts

St. Tammany Parish Sheriff Jack Strains' deputies executed a search warrant on the home of Sherrie Buras Manton and Norman J. Manton, Jr. on 24 January 2008. The deputies tore apart the Manton home and took items protected by the First and Second Amendments to the United States Constitution and Articles I, § 8 and § 11 of the Louisiana Constitution.

Among the items unlawfully taken by Sheriff Jack Strain, Deputy Chief Al Strain, and their deputies were:

1. One of the Manton Bibles with select chapters from the Old and New Testaments;
2. The Missal they use to Celebrate the Mass [The Mantons are Roman Catholic];
3. Their son David's Rosary, given to him at First Communion;
4. A Wooden Prayer Box brought from Europe during WWII;
5. Two St. Francis Medals blessed by Pope John Paul II;
6. Two "Our Lady of Medjugorje" Medals given to Norman Manton;
7. Small Journals used by Sherrie Buras Manton at Metairie Cenacle Retreats;
8. Various Religious and Prayer Cards;
9. An American Flag carrying bag, made of blue denim; and
10. Late David Manton's Remington 870 Youth Model 20 Gauge Shotgun with his initials

"DJM" carved in the stock; Given to David by his Mother when he was ten years old.

David was 18 years old when the shotgun was taken from the Manton home.

Neither the Holy Bible, the other religious items, nor the shotgun have been returned although this illegal seizure took place over four years ago. Sheriff Jack Strain and his office have a history of violating the Second Amendment rights of the residents and citizens of St. Tammany Parish.

<u>The Sheriff's Illegal Seizure Violates the This Court's Permanent Injunction</u>

New Orleans Mayor Ray Nagin and co-defendant Sheriff Jack Strain were sued by the National Rifle Association and Second Amendment Foundation, for prior unconstitutional seizures of firearms lawfully owned by St. Tammany and Orleans Parish citizens, immediately after Hurricane Katrina. *National Rifle Association of America, Inc. et al v. Ray Nagin, Jack Strain, et al.*. [USDC / EDLA 2:05-cv-04234-CJB-JCW]. Nagin and Strain were permanently enjoined by the federal court from such unlawful seizures and forced to return all known firearms taken at that time. [See: Rec. docs. 9, 12, 66].

The United States Court specifically **ORDERED, ADJUDGED, AND DECREED** THAT:

"**JACK STRAIN**, Jr., Sheriff, St. Tammany Parish and Sheriff's Deputies and **all of [Strain's] officers**, agents, servants and employees <u>are hereby enjoined and ordered to cease and desist confiscating lawfully-possessed firearms</u> from all citizens, including but not limited to, members of plaintiffs' National Rifle Association of America, Inc. And Second Amendment Foundation, Inc." [*NRA v. Nagin & Strain* Case No. 05-4234, Rec. d. 9, at pp.2-3. 3 January 2006].

The United States Court judgment against Jack Strain is still in force and the federal Court PERMANENTLY ENJOINED STRAIN "to cease and desist [from] confiscating lawfully-possessed firearms from all citizens . . . ." [*NRA v. Nagin & Strain* Case No. 05-4234, Rec. d. 9, at pp.2-3. 3 January 2006]. Jack Strain's co-defendant Ray Nagin was ordered to do the same. Ms. Buras and the Independent Firearm Owners Association asks the Court to enforce its standing order against Sheriff Strain, once again.

At no time in modern memory did the citizens of St. Tammany and Orleans Parishes and the State

of Louisiana need the elemental protections guaranteed by their right to own and bear firearms than during the weeks and months after Katrina and more recently Isaac. As well Strain and his family members took illegal possession of citizen's firearms and sold them to numerous persons.

### Even The Founding Fathers Did Not Anticipate Such First Amendment Violations

While the Founding Fathers anticipated such abuses by local authorities and enshrined the Second Amendment protections to prevent those abuses, the Founding Fathers never envisioned the seizure of a family's Holy Bible and other items used in worship, such as were seized from Sherrie Buras and her family by Sheriff Jack Strain, Chief Deputy Al Strain, and their employees.

As the Strains were acting under the color of law, their seizure of Sherrie Buras's Holy Bible, her son's First Communion Rosary and other items of worship and prayer, violate her First Amendment rights under the Constitutions and laws of Louisiana and The United surveillance. Their actions violate her rights under Louisiana's Constitution as well. In particular their actions have violated:

"Article I, § 8 of the Louisiana Constitution provides that no law shall prohibit a citizen from the free exercise of his or her religion . . . ;" and

"Article I, § 11, of the Louisiana Constitution provides: 'The right of each citizen to keep and bear arms shall not be abridged . . . .'"

The Strains' actions also violated Sherrie Buras' Fourth and Fourteenth Amendment rights of (1) freedom from unreasonable searches and seizures, (2) due process, and (3) equal protection.

No demand for the return of any of these items and no use of the procedures made available though the Courts can be deemed frivolous, groundless, vexatious, and improper.

III. In the initial report, the Magistrate did not find the Mark Hebert indictment sufficiently related to Buras-Manton's claims. At the Rule 59 & 60 pleading was filed neither counsel nor Manton had leave to discuss their cooperation with the Department of Justice. Manton testified

before the several grand juries convened in January 2013, to investigate crimes and matters in St. Tammany Parish. He was threatened by message which counsel and Manton presume came from another associate of Hebert and which was reported accordingly.

In the Hebert indictment the U.S. Attorney said: As part of the effort to cover-up the scheme, Prosecutors allege Herbert with specific intent did kill or participate in conduct that caused the death of Albert Bloch.

These are exactly the allegations made by the named defendants against Norman Manton in this [Manton II] and the earlier Manton matter [Manton I] in their attempt frame Norman Manton and thereby cover for Mark Hebert, who was [is] one of them. In fact, Mark Hebert's former St. Tammany Parish Sheriff's supervisor is the person who issued the order for Norman Manton's arrest. Manton and counsel have cooperated in this investigation for three years.

IV.  Buras Claim Not Frivolous as Other State Courts Found La. R.S. 14:95 Unconstitutional By Application of the Newly Passed Amendment to the Louisiana Constitution

Sherrie Buras's Claim cannot be frivolous as other Louisiana Courts have already found La. R.S.14:95 unconstitutional. Three Louisiana Courts have found that the language and provisions of La. R.S. 14:95, pertaining to effect of certain convictions on a citizen's Second Amendment Right to Keep and Bear Arms, are unconstitutional particular when considered against the Constitutional Amendment passed by the Citizens of Louisiana on 6 November 2012 and being applicable retroactively.

At the time of filing the motion to amend the judgment under Rule 59 and 60, there was no published jurisprudence applying the new and strict Constitutional Amendment. Sherrie Buras still does not have her late son's firearm. Her right to that weapon must be considered under the recently

passed but retroactive Constitutional Amendment and as long as the Sheriff is in possession of that firearm, her rights under the Louisiana Constitution are being violated and her exercise of such constitutional and civil rights cannot ever be considered frivolous, groundless, vexatious, and improper. Therefore any award of fees would be contrary to the provisions of federal law and the related jursiprudence.

V. The Report and Recommendation Provide Any Specific Analysis of Any Category of Work and Offer the Fifth Circuit Jurisprudence to Support The Facts That Such Could be Awarded; The 5th Circuit Jurisprudence Does Not Award Fees Without Such Analysis.

While counsel for the Sheriff has submitted a variety of activities for which they wish to be paid, neither counsel for the Sheriff nor the report and recommendations examines one single statement of work performed and then cite the Fifth Circuit's rulings as to what that work can be part of the attorney fees consideration or award. As the neither the report nor counsel's brief's analyze any category of legal work whatsoever nor show how such is within work awarded under the Fifth's Circuit's jurisprudence, counsel for Buras has nothing to oppose.

Defendants' memorandum makes no analysis whatsoever; nor does the report and recommendations—instead it cites the general case law for the award of fees but then <u>does not analyze one category of the legal work</u> claims as payable under the jurisprudence.

No understanding of the issues related to the protection of Buras's First and Second Amendment rights under the Louisiana and United States Constitutions could ever allow one to arrive at the conclusion that Buras or counsel did anything other than demand the protection of those rights.

Nothing in the 5th Circuit jurisprudence suggests that an award of attorney fees are justified particularly in light of the fact that counsel themselves have facilitated the Sheriff's

violation of her First and Second Amendment rights and have served to obstruct the return of Buras's Bible, Rosary, Missal, and late son's firearm.

Sheriff Jack Strain still has Buras's Bible, Rosary, Missal and firearm and her attorneys are complicituous in that illegal and unconstitutional possession. No attempt by Buras or counsel to get those protected items back could be considered improper much less vexatious.

A. Section 1988 of Title 42 of the United States Code "allows the district court, in its discretion, to award a prevailing party reasonable attorney's fees." United States v. Mississippi, 921 F.2d 604, 609 (5th Cir. 1991). The statute provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988. "While plaintiffs prevailing under 42 U.S.C. § 1988 are entitled to attorneys' fees unless special circumstances would render an award unjust, prevailing defendants are <u>entitled to attorney fees only when a plaintiff's underlying claim is frivolous, unreasonable, or groundless</u>." Mississippi, 921 F.2d at 609. A suit is frivolous only if it is "so lacking in arguable merit as to be groundless or without foundation." Walker v. City of Bogalusa, 168 F.3d 237, 240 (5th Cir. 1999).

Attorney's fees for prevailing defendants are thus presumptively unavailable unless a showing

is made that the underlying civil rights suit was "vexatious, frivolous, or otherwise without merit." Dean v. Riser, 240 F.3d 505, 508 (5th Cir. 2001).

The mere dismissal of a plaintiff's case does not establish that the claim itself was unreasonable, frivolous, or groundless, and the burden of showing these underlying factors remains on the defendant. Id. at 512.

When determining whether a plaintiff's civil rights action is frivolous, the court may consider the following factors: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the court dismissed the case or held a full trial. Myers v. City of West Monroe, 211 F.3d 289, 292 (5th Cir. 2000). The dismissal of a plaintiff's claims before they reach the jury is insufficient by itself to support a finding of frivolity. See id. at 293.

Rather than relying on the outcome of a case, the court must inquire "'whether the case was so lacking in merit that it was groundless.'" Hahn v. City of Kenner, 1 F. Supp. 2d 614, 617 (E.D. La. 1998) (citing United States v. Mississippi, 921 F.2d 604, 609 (5th Cir. 1991)). If a plaintiff presents some credible evidence in support of the claim, then the case has merit, and an award under Section 1988 is inappropriate. See id.; see also Brown v. Borough of Chambersburg, 903 F.2d 274, 276-77 & n. 1 (3d Cir. 1990) (noting that the standards for assessing attorney's fees are identical under Section 1988 and 42 U.S.C. § 2000e-5(k)).

Courts disfavor awarding fees to prevailing defendants because an average plaintiff in such actions only knows of his or her belief that the discrimination occurred and of the filing of the claim, and generally defers to counsel's advice. Davis v. Braniff Airways, Inc., 468 F. Supp. 10, 13-14 (N.D. Tex. 1977).

B. Title 28, United States Code, Section 1927 provides, in its entirety:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927 (emphasis added). "Underlying the sanctions provided in 28 U.S.C. § 1927 is the recognition that frivolous appeals and arguments waste scarce judicial resources and increase legal fees charged to the parties." Baulch v. Johns, 70 F.3d 813, 817 (5th Cir. 1995). The Supreme Court has observed that "§ 1927 does not distinguish between winners and losers or between plaintiffs and defendants." Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980). The statute is designed to curb litigation abuses by counsel, irrespective of the merits of the client's claims or defenses.

Nevertheless, courts should remain mindful that sanctions under 28 U.S.C. § 1927 are "punitive in nature" and should only be awarded if a party "multiplies the proceedings . . . unreasonably and vexatiously." Bryant v. Military Dept. of Miss., 597 F.3d 678, 694 (5th Cir. 2010)(citing Religious Tech. Ctr. v. Liebreich, 98 Fed. Appx. 979, 983 (5th Cir. 2004); see also Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1416 (5th Cir. 1994)) (noting that Section 1927 must be strictly construed so as "not to dampen the legitimate zeal of an attorney in representing his client"). This standard, which "focuses on the conduct of the litigation and not on the merits," requires "clear and convincing evidence 'that every facet of the litigation was patently Section 1927 meritless' and 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'" Id. (quoting Procter & Gamble Co. v. Amway Corp., 280 F.3d 519, 525-26 (5th Cir. 2002)) (emphasis in original).

Nothing in the 5th Circuit jurisprudence suggests that an award of attorney fees are

justified particularly in light of the fact that counsel themselves have facilitated the Sheriff's violation of her First and Second Amendment rights and have served to obstruct the return of Buras's Bible, Rosary, Missal, and late son's firearm.

Sheriff Jack Strain still has Buras's Bible, Rosary, Missal and firearm and her attorneys are complicituous in that illegal and unconstitutional possession. No attempt by Buras or counsel to get those protected items back could be considered improper much less vexatious.

VI.     39 Word Motion and 13 Word Order—Two Plus Hours Billed For Reading?

The report skirts the issue related to the dismissal of defendants Longino and Core in the prior case. The hours submitted in the related case raised the issue of honesty and the amounts actually billed to the taxpayers of St. Tammany Parish through counsel for the Sheriff. The hours submitted again, reflect that same billing practice. The report ignores this fraud.

In the related case, when the Mantons and counsel concluded they did not have enough evidence to go forward with the claims against defendants Longino and Core, counsel wrote a 39 word motion to voluntarily dismiss them. Counsel then wrote a 13 word order dismissing both, which the Judge eventually signed. It took undersigned counsel less than fifteen minutes to type the motion and the order, to convert both documents to a pdf file, and to file them electronically with the Clerk of Court.

It took three lawyers working for the Sheriff Strain over two hours to read and analyze this pleading! More than two hours! 52 words! A friend and associate whose native language is Gujarati, read and understood both documents in less than one minute. Perhaps the complexity of the issues presented, prolonged the reading. The issues were:

The Motion to Voluntarily Dismiss Defendants Longino and Core states:

"**Complainants Manton move the Court to dismiss defendant GREGORY LONGINO and MIKE CORE from this action and any related actions that have or may arise from the facts set forth in the original petition or any amended petition thereto**." [39 Words]. [Rec. d. 98]

The Order signed by the Judge dismissing them, states:

"**That defendants GREGORY LONGINO AND MIKE CORE are voluntarily dismissed from this lawsuit**." [13 Words]. [Rec. d. 98-1]

The Judge signed this order shortly after it was filed. [Rec. d. 99]

**Do the Math**

Mr. Hughes read and reviewed these pleadings for over an hour. His co-counsel read and reviewed the pleadings for thirty minutes each. Fifty-two words—three lawyers reading—two-plus hours billed. 120-Plus Minutes billed for reading 52 words, equals? [120 Minutes ÷ 52 Words = 2.3076 Minutes to Read Each Word]. Two minutes and twenty seconds to read each word.

With lawyers billing at an estimated $125 an hour, Sheriff Strain [actually the St. Tammany Parish taxpayers] has [have] paid his lawyers [$125 ÷ 60 Minutes = $2.08333 per minute x 2.3076 minutes = $4.80 to read each word in these 52-word pleadings.] $4.80 x 52 words = $249.60.

. "Nice work if you can get it . . . ."[2]

VII. Determining the Reasonable Hours Expended By the Legal Work Performed

Neither the defendants, counsel, nor the report analyzed the work done by category or otherwise. The report simply says, that the work submitted was reviewed and was acceptable. But acceptable is not the criteria mandated by the Fifth Circuit in the award of fees. Counsel for Buras

---

[2] George & Ira Gershwin

is prejudiced as the report has not stated one category of work and the related jurisprudence which makes fees for that work allowed for award.

The party seeking attorney's fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended and proving the exercise of "billing judgment." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir.1997); *Walker,* 99 F.3d at 770. Attorneys must exercise "billing judgment" by excluding time that is unproductive, excessive, duplicative, or inadequately documented when seeking fee awards. *Id.* (*citing Walker v. United States Dep't of Housing & Urban Dev.,* 99 F.3d 761, 769 (5th Cir.1996)). Defendants have provided nothing more than total of hours alleged spent without providing the dates, times, work performed, and how such work was required and therefore payable under 42 U.S.C. § 1988 or 28 U.S.C. § 1927.

<u>Specifically, the party seeking the award must show all hours actually expended on the case but not included in the fee request. And the party seeking such hours must show how each of those hours was spent</u>. *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir. 1987).

A review of the 52 pages of hours allegedly worked or certainly billed demonstrates that Sheriff's counsel has submitted every hour imagined or billed to the taxpayer and has failed to do as required by this Circuit in *Leroy*, and instead has asked for all hours—no matter what the nature of the tasks performed or by whom—in their fee request.

Hours that are not properly billed to one's client also are not properly billed to one's adversary. *Hensley*, 461 U.S. at 434. The remedy for failing to exercise billing judgment is to reduce the hours awarded as a percentage and exclude hours that were not reasonably expended. *Id.* Alternatively, this Court can conduct a line-by-line analysis of the time report. *See Green v.*

*Administrators of the Tulane Educational Fund*, 284 F.3d 642 (5th Cir. 2002).

The Defendants again have not provided the Court with evidence that they excluded any legal hours worked on the case that were unproductive, excessive, duplicative, or inadequately documented. Counsel for the Sheriff has not provided a memorandum in support of the type of work that is taxable under the jurisprudence of the Fifth Circuit Court of Appeal. The Defendants failed to exercise billing judgment as required under *Leroy* and the related jurisprudence. Though the defendants have not separated the taxable hours from their total hours submitted, neither have they provided the Court with any authority as to what work performed would be taxable—as they are required to do in this Circuit.

However, the fact remains that Sheriff and counsel are not entitled to any taxation of costs or attorney fees as they are in continuing violation of the First and Second Amendment rights of Buras and shall be as long as they continue to illegally possess her Bible, Rosary, Missal and late son David's firearm.

A Citizen does not lose her First or Second Amendment Rights when law enforcement continues to be in the unlawful possession of their Bible, Rosary, Missal used to worship at Mass, or their firearm. Sheriff Jack Strain and his deputies unlawfully seized Sherrie Buras-Manton's religious items and her late son's shotgun and are still in possession of all of those items.

No attempts to use court procedures can be considered frivolous, groundless, vexatious, and improper when the St. Tammany Parish Sheriff or any law enforcement agency still has possession of such constitutionally protected personal items, as those they have taken from Sherrie Buras and refuse to return. Strain's attack on Buras and Manton is an attack on all Catholics and on their right to worship but also an attack on all citizens' right to be free from such assaults on their constitutional

rights and freedom to worship as they are entitled to.

Respectfully submitted:

s/ Daniel G. Abel

| | |
|---|---|
| Daniel G. Abel | Richard J. Feldman, Esq. |
| [La. Bar No. 8348] | [Washington D.C. Bar No. 399259] |
| 2421 Clearview Parkway | President, IFOA, Inc. |
| Legal Department | PO Box 340 |
| Suite 106 | 129 Mountain Road |
| Metairie, LA 70001 | Rindge, NH 03461 |
| Telephone: 504.208.9610 | Telephone: 603. 899.6444 |
| | |
| Facsimile: 888.577.8815 | Facsimile: 888.727.2891 |

<u>Certificate of Service</u>
I have filed this pleading using the CM/ECF system on 16 August and served all counsel.
s/ Daniel G. Abel